# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.

**STERLING PARISH,**

    **Defendant.**

Case No. 1:21-cr-127-14
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This cause comes before the Court on Defendant Sterling Parish's Motion for Revocation of the Magistrate's Order of Detention ("Second Motion for Bond," Doc. 115), filed on July 23, 2022. For the reasons stated more fully below, the Court **DENIES** Parish's Motion (Doc. 115).

## BACKGROUND

The Indictment in this case charges Parish with one count of Narcotics Conspiracy. (*See* Indictment, Doc. 34, #899–900).

On December 17, 2021, Parish appeared before the Magistrate Judge for a detention hearing pursuant to 18 U.S.C. § 3142(f). (12/17/2021 Min. Entry). During that hearing, the Magistrate Judge found that Parish satisfied the requirements for pretrial detention under § 3142(e), which states that the court must detain a defendant if it determines that "no condition or combination of conditions [would] reasonably assure the appearance of the [defendant] as required and the safety of any

other person and the community." Accordingly, the Magistrate Judge ordered Parish detained pending trial. (Detention Order, Doc. 67).

Subsequently, Parish filed a Motion for Revocation of the Magistrate's Order of Detention ("First Motion for Bond," Doc. 86) on February 28, 2022, where he appealed the Magistrate Judge's Detention Order. In that two-page Motion, Parish raised four arguments. First, Parish noted that his girlfriend was pregnant and due to give birth in March—thus, pretrial release was justified because it would allow Parish to help care for his newborn child when he or she arrived. (*Id.* at #1456). Second, Parish stated that his girlfriend had offered her home as a place for Parish to stay if released on bond, which would address any concerns the Court might have about Parish's residential stability. (*Id.*). Third, to the extent the Court was concerned about Parish's lack of employment history, Parish explained that this was, "in large part, due to his responsibilities in raising his children and supporting them at home." (*Id.* at #1457). Fourth, Parish's Motion emphasized that—although he had a criminal history—he had no prior convictions for crimes of violence and, at least since 2010, he had generally complied with court orders. (*Id.* at #1456–57). Thus, Parish argued, he would not pose a danger to his community or a risk of flight.

While Parish's First Motion for Bond was pending, he also filed a Motion for Furlough on May 4, 2022. (Doc. 99, #1525). There, Parish explained that his father passed away the previous week; accordingly, Parish requested that the Court release him temporarily so he could attend his father's funeral. (*Id.*).

On May 13, 2022, the Court (the matter was then assigned to another Judge on this Court) issued an Order denying both Parish's First Motion for Bond and his Motion for Furlough. (Doc. 101). After reviewing Parish's background, the nature of the charged offense, and other factors, the Court concluded that

> there are no conditions or combination of conditions that [would] reasonably assure [Parish's] appearance, nor the safety of the community if [Parish was] released on bond. And the Court finds the same analysis equally applicable as to [Parish's] request for furlough, given that [Parish's] release, for any period of time, would pose a risk to the safety of the community, and a particularly significant risk of flight.

(*Id.* at #1536–37).

On June 15, 2022, this matter was reassigned to the undersigned. (Order of Reassignment, Doc. 106). Subsequently, on July 23, 2022, Parish filed his Second Motion for Bond. (Doc. 115). Parish's Second Motion largely retreads the same arguments as his First Motion, albeit with two modifications. First, as anticipated in the First Motion, Parish states that his new daughter was born in March 2022—thus pretrial release is appropriate because Parish "is needed at home to help care for his child." (*Id.* at #1578). Second, as previously explained in Parish's Motion for Furlough, Parish states that his father recently passed away, and he "is needed at home to help his family move past their tragic loss." (*Id.*).

The government filed its Opposition to Parish's Second Motion for Bond on August 12, 2022. (Doc. 119). After reviewing the parties' briefs, the Court concludes that this matter is now ripe for adjudication.

3

## LAW AND ANALYSIS

When a magistrate judge orders a defendant detained pending trial under § 3142(e) and the defendant appeals to the district court, the "district court reviews [the] magistrate judge's detention order *de novo*." *United States v. Rainey,* No. 20-cr-10005-1, 2020 U.S. Dist. LEXIS 89617, at *4 (W.D. Tenn. May 21, 2020); *United States v. Dailey*, No. 17-cr-20740, 2017 WL 5664185, at *2 (E.D. Mich. Nov. 27, 2017); *United States v. Watkins*, No. 13-02, 2013 WL 614252, at *3 (E.D. Ky. Feb. 19, 2013) (observing that, although the Sixth Circuit has not "spoken directly" on the appropriate standard of review when a defendant appeals a magistrate judge's detention order, "most district courts in the Sixth Circuit have applied the *de novo* standard of review").

In this case, though, Parish already appealed the Magistrate Judge's detention order when he filed his First Motion for Bond. Accordingly, for the Court to consider his Second Motion for Bond, Parish must demonstrate—as a threshold matter—that his bond hearing may be reopened pursuant to 18 U.S.C. § 3142(f). *See, e.g.*, *United States v. Isaacs*, No. 1:19-cr-37, 2020 WL 3799081, at *3 (S.D. Ohio July 7, 2020) (declining to grant a defendant's second motion for bond where the defendant failed to satisfy the conditions to reopen the sentencing hearing under § 3142(f)); *United States v. Rivers*, No. 19-20492, 2021 WL 5234516, at *1 (E.D. Mich. Nov. 10, 2021) (same).

Section 3142(f) states, in pertinent part, that a bond hearing "may be reopened … at any time before trial" if the Court concludes two conditions are met. First, the movant must show that "information exists that was not known to the

movant at the time of the hearing." 18 U.S.C. § 3142(f). Second, that new information must have "a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community." *Id.* The Sixth Circuit has "held the use of the word 'may' [in § 3142(f)] as opposed to 'will,' … implies that the district court has discretion in determining whether to grant the motion." *United States v. Watson*, 475 F. App'x 598, 599 (6th Cir. 2012) (internal quotation marks omitted). "The rationale for the rule is to encourage a party to be diligent in bringing forth all material evidence the first time a hearing is held and discourage piecemeal presentations or prolonged proceedings absent a demonstrated legitimate reason for not presenting the evidence." *United States v. Fordham*, No. 3:22-cr-109, 2022 WL 2898912, at *4 (M.D. Tenn. July 21, 2022).

The first question, then, is whether Parish has presented any information in his Second Motion for Bond that was not previously known to him. "Courts interpret this requirement strictly, requiring a showing of truly changed circumstances or a significant event." *United States v. Bothra*, No. 21-1612, 2021 U.S. App. LEXIS 37053, at *3 (6th Cir. Dec. 15, 2021).

As noted, here the only arguably new information Parish presents in his Second Motion is that (1) his daughter was recently born, and (2) his father recently passed away. (Sec. Mot. for Bond, Doc. 115, #1577–78). The Court is not sure, though, whether either of these pieces of information qualify as "truly new" under the strict standard applied in this circuit. As for Parish's first argument, his First Motion for

5

Bond anticipated the birth of his daughter by noting that his girlfriend was pregnant and due to give birth in March 2022. (Doc. 86, #1456). Indeed, by May 2022, when the Court issued its Order ruling on the First Motion for Bond, that anticipated birth date had already passed. (Order, Doc. 101). Similarly, although Parish did not discuss his father in his First Motion for Bond, the Court was already aware of his father's death at the time it ruled on that Motion, because in the interim Parish filed his separate Motion for Furlough to attend his father's funeral. (Doc. 99, #1525). Thus, presumably, the then-assigned Judge considered both the birth of Parish's new daughter and the death of his father when he ruled on Parish's First Motion for Bond. For that reason, the Court is skeptical whether either of these two pieces of information qualify as sufficiently "new" to warrant reopening the bond hearing under § 3142(f).

In fairness to Parish, to the extent that the birth of his daughter and the death of his father are indeed "new information," they would appear to satisfy the second prong of the § 3142(f) analysis: materiality. As the Sixth Circuit has explained, under this element, the new information presented by the defendant "must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *Watson*, 475 F. App'x at 600. As to the latter, the Court concludes that the birth of Parish's daughter and the death of his father likely say little about the extent to which Parish might pose a danger to his community. That said, Parish's Second Motion argues that Parish is needed at home to help his family cope with the loss of his father and to

6

help raise his new daughter. (Doc. 115, #1577–78). Crediting these assertions, they would suggest that his risk of flight is at least somewhat lower than it would be otherwise, since these life changes reinforce Parish's need to remain in the Cincinnati area. Accordingly, the Court concludes that Parish has satisfied the materiality prong of the § 3142(f) analysis.

In short, Parish has presented evidence that meets the materiality requirement, but is of dubious "newness." The Court finds it is unnecessary to resolve fully that latter issue, however, because even if Parish could satisfy the requirements for reopening his bond hearing, the Court concludes that he would not be entitled to pretrial release at this juncture.

Ordinarily, "[t]he default position of the law … is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). However, "[t]hat default is modified … for certain, particularly dangerous defendants. Specifically, when a 'judicial officer finds that there is probable cause to believe' that a defendant committed one of the crimes listed in section 3142(e)(3), there is a presumption in favor of detention …." *Id.* Here, because Parish has been charged in the Indictment with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," this presumption in favor of detention applies. *See* 18 U.S.C. § 3142(e)(3)(A). To overcome that presumption, Parish "must produce evidence that he is neither a danger to the community nor a risk of flight." *United States v. Brooks*, No. 21-1646, 2021 U.S. App. LEXIS 33089, at *3 (6th Cir. Nov. 5, 2021). Although this "burden of

7

production is not heavy, [Parish] must introduce at least some evidence." *Id.* (quoting *Stone*, 608 F.3d at 945). For example, in *Brooks*, the Sixth Circuit found that the defendant had successfully met his burden of production, because he "presented some evidence that he was not a danger to the community: he was a lifelong resident of the district; his years-long girlfriend lived with him in the district; and his criminal history involved only misdemeanor convictions." *Id.* at *3–4.

Here, the Magistrate Judge determined that Parish had failed to present adequate evidence at his bond hearing to satisfy his burden of production. (Detention Order, Doc. 67, #1357). His two Motions for Bond, however, supplement the record in such a fashion that the Court concludes that Parish would be able to overcome the presumption in favor of detention if the bond hearing were to be reopened. For example, Parish's Second Motion notes that, if released, he would be able to stay with his girlfriend and newborn daughter at their residence in Cincinnati. (Doc. 115, #1577). Moreover, while Parish concedes he has a criminal history, his two Motions emphasize that he has no prior convictions for crimes of violence. (Doc. 86, #1457; Doc. 115, #1578). Accordingly, the Court concludes that—if Parish's detention hearing were to be reopened under § 3142(f)—Parish would be able to meet the relatively light burden of production necessary to overcome the presumption of detention.

But that is not the end of the inquiry. If a defendant satisfies his burden of production, the burden of persuasion on the ultimate issue of detention shifts back to the government. *Stone*, 608 F.3d at 945. Even then, though, the presumption remains

"one of several other factors that must be weighed by the district court under [18 U.S.C.] § 3142(g)." *Brooks*, 2021 U.S. App. LEXIS 33089, at *4. That is because the presumption is "not simply an evidentiary tool," but also "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 945; *see also Brooks*, 2021 U.S. App. LEXIS 33089, at *4 ("[T]he presumption 'represents Congressional findings that certain offenders … are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions.'" (quoting *Stone*, 603 F.3d at 946)). In deciding whether the government has carried its burden of persuasion, then, the question, as a general matter, is whether "special features" exist showing that the defendant's case is "outside the congressional paradigm." *Stone*, 608 F.3d at 946 (internal quotation marks omitted).

With that framework in mind, under 18 U.S.C. § 3142(g), the district court must also consider four other factors: "(1) 'the nature and circumstances of the offense,' including whether the offense[s are] controlled substances offense[s]; (2) 'the weight of the evidence against' the defendant; (3) 'the history and characteristics of the defendant'; and (4) 'the nature and seriousness of the danger to any person of the community that would be posed by' the defendant's release." *Brooks*, 2021 U.S. App. LEXIS 33089, at *4 (quoting 18 U.S.C. § 3142(g)). The Court addresses each below.

9

### a. The Nature And Circumstances Of The Offense.

The first factor the Court must consider is "the nature and circumstances of the offense charged, including whether the offense … involve[d] … a controlled substance." 18 U.S.C. § 3142(g)(1). For example, in *Brooks*, the Sixth Circuit found that this factor weighed in favor of detention because the defendant's "only charged offense involved trafficking in large quantities of methamphetamine. His offense also involve[d] a substantial sentence of up to ten years to life imprisonment." *Brooks*, 2021 U.S. App. LEXIS 33089, at *4–5.

In this case, the government alleges that Parish was involved in a wide-ranging and long-running conspiracy to distribute controlled substances, including "one kilogram or more of mixtures and substances containing a detectable amount of heroin … and 400 grams or more of mixtures or substances containing a detectable amount of fentanyl." (Indictment, Doc. 34, #899–900). If convicted, Parish faces a mandatory minimum term of ten years in prison, with a possible sentence up to life. (Op., Doc. 101, #1532–33). Nor is such a severe sentence surprising, considering the potential consequences of the conduct alleged here. Generally speaking, two milligrams of fentanyl is considered a potentially lethal dose. *See Facts about Fentanyl,* United States Drug Enforcement Administration (Apr. 29, 2021).[1] Here, Parish is accused of conspiring to traffic four hundred grams of a substance containing a detectable amount of fentanyl. Even if the substance were to contain a substantial amount of cutting agents, such that only a small percentage of that

---

[1] Available at https://www.dea.gov/resources/facts-about-fentanyl.

substance is actually fentanyl, it would likely nonetheless be a sufficient amount of fentanyl to kill hundreds—if not thousands—of people. In short, given the quantity of drugs allegedly involved, the dangers those drugs represented, the duration of the alleged conspiracy, and the severity of the potential sentence Parish faces, the Court concludes that, if Parish's bond hearing were to be reopened, this factor would favor continued detention.

### b. The Weight Of The Evidence Against Parish.

Next, the Court turns to the weight of the evidence against Parish. Importantly, the Sixth Circuit has found that this factor "only goes to the likelihood of dangerousness or that the defendant will pose a risk of flight, 'not the weight of the evidence of the defendants' guilt.'" *United States v. Bothra,* No. 19-1092, 2019 U.S. App. LEXIS 9375, at *4–5 (6th Cir. Mar. 28, 2019) (quoting *Stone,* 608 F.3d at 948); *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (noting that § 3142(g) "neither requires nor permits a pretrial determination of guilt").

For example, in *United States v. Whigham*, a defendant accused of participating in a drug trafficking conspiracy argued that this factor favored pretrial release primarily because "the evidence he was involved a drug conspiracy [was] tenuous." No. 22-5444, 2022 U.S. App. LEXIS 19148, at *4 (6th Cir. July 12, 2022). The Sixth Circuit rejected the defendant's argument, however, finding that it went "to the weight of the evidence of his guilt, not his dangerousness." *Id.* Properly applied, the Sixth Circuit found the weight of the evidence factor favored continued detention, explaining that even though the defendant "ha[d] no prior convictions for

11

drug trafficking and [a prior] conviction for possession of cocaine did not involve a firearm, the current offense involve[d] trafficking significant amounts of methamphetamine." *Id.* "Evaluated in th[at] context," the Court thus concluded, "the evidence support[ed] [the defendant's] detention." *Id.*

Similarly, in applying this factor in a recent case, the Northern District of Ohio noted that the defendant's "distant past involved some violent crimes, [but] those prior violent offenses [were] over twenty years old, and [the defendant] ha[d] not had criminal charges at all, excluding the charges in this case, for fifteen years." *United States v. Staudohar*, No. 1:21-cr-533, 2021 WL 4340069, at *4 (N.D. Ohio Sept. 23, 2021). On the other hand, the court also noted that the offenses charged in that case "involve[d] threats of violence." *Id.* Moreover, the court also expressed concern that, after listening to an audio recording of one of those threats, the defendant "did not sound mentally well." *Id.* Nonetheless, the record showed that the defendant "did not take steps toward acting on the threats he made." *Id.* Thus, on final analysis, the court concluded that this factor "lean[ed] slightly in favor of release." *Id.*

Applying this factor to Parish, the Court concludes that the weight of the evidence here would likely favor pretrial detention. The Court reaches this conclusion for three reasons. First, as in *Whigham*, 2022 U.S. App. LEXIS 19148, at *4, "the current offense involve[d] trafficking significant amounts of" drugs—drugs that, as observed above, posed a substantial danger to a large number of people. (*See* Indictment, Doc. 34, #899–900). And, based on the allegations in the Complaint, Parish was a very active participant in this dangerous course of conduct. For example,

12

the Complaint alleges that, after law enforcement officials attempted to pull Parish over for a traffic stop, Parish fled and led the officers on a vehicle pursuit. (No. 1:21-mj-00881, Doc. 4-1, #1322). "Following the pursuit, officers searched Parish's vehicle and found a white powdery substance that appeared to be fentanyl." (*Id.*). Officers later executed a search warrant in Parish's garage and discovered 400 grams of fentanyl in a car they had seen Parish driving. (*Id.*). Additionally, the Complaint alleges that Parish sold a substance to a confidential informant that later tested positive for fentanyl. (*Id.* at #1323). Finally, officers intercepted a package destined for Cincinnati and found it contained approximately 250 grams of suspected fentanyl. (*Id.*). Parish's known cell phone number had checked the tracking number for the location of the package approximately 78 times. (*Id.*).

Second, as the Court explained in denying the First Motion for Bond, Parish has an extensive criminal history, including:

> two convictions for failing to comply with police officers; one conviction for possession of heroin; one conviction for possession of fentanyl compound; two convictions for possession of marijuana; one conviction for trafficking in marijuana; one conviction for weapons under disability; one conviction for possession of illegal drug paraphernalia; one conviction for possession of criminal tools; one conviction for obstructing official business; one conviction for OVI; eight additional misdemeanor convictions for drug possession; and roughly two-dozen other driving-related convictions. Most notably, however, [Parish] has two probation violations and 26 failures to appear, including violations of electronic monitoring.

(Doc. 101, #1535–36 (internal citations omitted)). Admittedly, these are not crimes of violence. Nonetheless, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any

13

indication that the defendant has engaged in violence," *Stone*, 608 F.3d at 947 n.6, and the quantities allegedly involved here are hardly "run-of-the-mill." Accordingly, Parish's criminal history also provides substantial evidence of his dangerousness to the community and risk of flight.

Third, the alleged circumstances surrounding Parish's arrest for the instant offense raise substantial cause for concern. As the Court explained in its prior order, Parish allegedly:

> misled law enforcement on numerous occasions into believing [he] would surrender on the arrest warrant, but then fail[ed] to do so. Law enforcement had to resort to obtaining a warrant for the location information on [Parish's] cell phone in order to apprehend him—a full month after the issuance of the arrest warrant.

(Doc. 101, #1534 (internal citations omitted)). Parish's alleged pattern of misleading law enforcement and failing to cooperate with his own arrest provide further evidence in favor of his dangerousness to the community and his risk of flight. In light of these allegations, as well as the Parish's criminal history and the strong evidence of his involvement with the alleged conspiracy at issue in this case, the Court concludes that the second § 3142(g) factor would point strongly in favor of continued pretrial detention if the bond hearing were to be reopened.

### c. Parish's History And Characteristics.

Having established that the first two factors would likely both point in favor of continued pretrial detention, the Court next addresses the third § 3142(g) factor: Parish's "history and characteristics." Under the statute, this factor includes Parish's "character, physical and mental condition, family ties, employment, financial

14

resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at courts proceedings." 18 U.S.C. § 3142(g)(3)(A). As part of this factor, the Court must also consider "whether, at the time of the current offense or arrest, [Parish] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." *Id.* at § 3142(g)(3)(B).

Parish's history and characteristics point in competing directions. On the one hand, he appears to have strong ties to the Cincinnati area. He was born here, and his girlfriend, children (including his newborn daughter), and siblings live in the area. (Pretrial Servs. Rep., Doc. 65, #1349–50). Parish's girlfriend has also offered a residence where Parish can stay pending trial. (Sec. Mot. for Bond, Doc. 115, #1577). Additionally, Parish's Second Motion for Bond indicates that his presence in Cincinnati is especially necessary given his father's recent death. (*Id.* at #1578). All of these factors might reduce Parish's risk of flight, which would in turn point in favor of granting pretrial release.

On the other hand, however, various factors in Parish's background raise significant cause for concern. As the government noted in its Opposition to the First Motion for Bond, Parish's "only reported employment is two years ago when he worked off and on for a janitorial service for one year." (Doc. 94, #1502). Thus, there is some concern that Parish may resort to illegal means to support himself if released on bond. Moreover, as already discussed, Parish has a lengthy history of interactions

15

with the criminal justice system. Of particular concern in that regard are Parish's twenty-six prior failures to appear and two probation violations. (Pretrial Servs. Rep., Doc. 65, #1349). Although Parish attempts to downplay these incidents in his Second Motion by arguing that he "has generally complied with court orders since 2010," he concedes that, as recently as 2018, he had "three failures to appear on misdemeanor and traffic cases." (Sec. Mot. for Bond, Doc. 115, #1577). As the Court stated in its previous Order denying Parish's First Motion for Bond, if Parish "is unwilling to comply with supervision and to appear when he is facing relatively minor charges, this Court finds no comfort that [he] will appear as required when facing the significant penalties in the instant case." (Doc. 101, #1536). Accordingly, the Court concludes that Parish's history and characteristics would weigh in favor of continued pretrial detention.

### d. The Nature And Seriousness Of The Danger.

The final factor the Court must analyze under § 3142(g) is "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g)(4). In this case, Parish has been charged with one count of Narcotics Conspiracy. "Drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone,* 608 F.3d at 947 n.6, For example, in *Whigham,* the Sixth Circuit found that the defendant's indictment on drug trafficking alone was sufficient basis to conclude that the fourth § 3142(g) factor pointed in favor of pretrial detention. 2022 U.S. App. LEXIS 19148, at *5. Especially given some of the quantities allegedly involved here, including amounts of fentanyl that easily could

16

prove fatal to hundreds—if not thousands, or even tens of thousands—of people (depending on the purity of the substance containing fentanyl), the Court likewise concludes that the fourth factor would weigh in favor of continued detention.

## CONCLUSION

Putting it all together, the Court finds each of the above factors indicates that there are no conditions of release "that [would] reasonably assure the appearance of [Parish] as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). For that reason, the Court **DENIES** Parish's Second Motion for Bond (Doc. 115).

**SO ORDERED.**

August 25, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**